NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| FPM FINANCIAL SERVICES, LLC, | : |
| Plaintiff, | : |
| v. | : Civil Action No. 10-6118 (MAS) (LHG) |
| REDLINE PRODUCTS, LTD, *et al.*, | : MEMORANDUM OPINION |
| Defendants. | : |

**SHIPP, District Judge**

This matter comes before the Court upon Defendant Redline Products Ltd.'s ("Defendant" or "Redline Products") Motion for Summary Judgment. (Def.'s Br., ECF No. 52-2.) Plaintiff FPM Financial Services, LLC ("Plaintiff" or "FPM") filed Opposition to the Motion. (Pl.'s Opp'n, ECF No. 58.) Defendant filed a Reply. (Def.'s Reply, ECF No. 59.) The Court has carefully considered the Parties' submissions and decided the matter without oral argument pursuant to Local Civil Rule 78.1. For the reasons stated below, and other good cause shown, Defendant's Motion for Summary Judgment is GRANTED.

I.  **Background**

The following is taken from Plaintiff's Complaint. Frank Mengrone ("Mengrone"), the President and Managing Member of FPM, alleges that FPM was the exclusive United States distributor of "Redline," a disposable breathalyzer. (Compl., ECF No. 1.) Defendant Redline Products manufactures and supplies Redline. (*Id.*) Defendant's offices are located in South Africa. (*Id.*) The claims in the instant action arise from a contract between FPM and Redline

Products executed in the spring of 2010 ("Distribution Agreement"). (*Id.*) Defendant takes the position that Plaintiff is not the exclusive distributor of Redline. (Def.'s Br. 5.) In essence, the Parties disagree regarding whether FPM is the exclusive distributor of Redline in the United States. (Compl. Count 1, ¶¶ 2-5.) The Parties further disagree with regard to whether Defendant violated a separate Nondisclosure Agreement.

Count One of Plaintiff's Complaint alleges that Redline has breached the Distribution Agreement, including a Confidentiality Clause contained therein. (*Id.* Count 1, ¶¶ 7-9.) Count Two of the Complaint alleges breach of both the Nondisclosure Agreement and the Confidentiality Clause of the Distribution Agreement. (*Id.* Count 2, ¶¶ 1-8.) Count Three alleges a claim against Blow Before You Go, LLC ("BBYG") of malicious inducement.[1] (*Id.* Count 3, ¶¶ 1-5.) Count Four of the Complaint alleges that FPM relied on Redline's promises and was justified in considering itself the sole distributor. (*Id.* Count 4, ¶¶ 1-2.) The fifth and final Count of Plaintiff's Complaint alleges that FPM acted in reliance upon FPM's promises, and that FPM conferred a benefit upon Redline Products. (*Id.* Count 5, ¶¶ 1-2.)

In conjunction with Defendant's Motion for Summary Judgment, Redline Products filed a Statement of Material Facts Not in Dispute. (Def.'s SUMF, ECF No. 52-1.) Plaintiff's Opposition included a Response to the Statement of Material Facts Allegedly Not in Dispute. (Pl.'s SUMF Response, ECF No. 58.) As reflected in the Complaint, the Parties disagree with regard to the fundamental inquiry as to whether or not the Distribution Agreement dated April 29, 2010, provided exclusive distribution rights to FPM. (Def.'s SUMF ¶ 1; Pl.'s SUMF Response at ¶ 1.) While Redline Products asserts that FPM was advised that the Distribution

---

[1] Pursuant to the Order and Opinion of the Hon. Joel A. Pisano, Defendant BBYG was dismissed from the instant action on March 12, 2012 for lack of jurisdiction. (ECF Nos. 39-40.) Accordingly, Count 3 is dismissed.

Agreement did not provide exclusivity rights, Plaintiff denies these allegations and states "Redline cannot point to a single conversation in which it expressly stated to Mengrone that this was not an exclusive contract." (Pl.'s SUMF Response at ¶ 4.) According to Defendant, the Distribution Agreement limited the sale of Redline's breathalyzer to 12 explicitly delineated customers. (Def.'s SUMF at ¶ 6.) Plaintiff, however, takes the position that these accounts do not serve as a limitation and the Distribution Agreement provides for accounts to be added. (Pl.'s SUMF Response at ¶ 6.)

Despite the dispute as it relates to the exclusivity of the Distribution Agreement, it is undisputed that the contract provided for a "trial year." (*Id.* at ¶ 5.) It is further undisputed that the Distribution Agreement provided for FPM's sale to additional customers only with prior approval from Redline. (Def.'s SUMF at ¶ 7; Pl.'s SUMF Response at ¶ 7.) Additionally, the Parties do not dispute that FPM had 18 months to sell to the designated customers, and Redline could terminate the Distribution Agreement if FPM was unable to make the sales. (Def.'s SUMF at ¶ 8; Pl.'s SUMF Response at ¶ 8.) The Parties similarly agree that the Distribution Agreement contained an integration clause and a modification clause forbidding revision without a written executed supplemental agreement. (*Id.* at ¶¶ 9-10.)

Additionally, Redline Products entered into an agreement with BBYG which allegedly "carv[ed] out" the accounts in the Distribution Agreement. (*Id.* at ¶ 20.) Defendant asserts that it never disclosed the 12 customers. (*Id.*) Plaintiff disagrees. (*Id.*) BBYG made no sales to any United States customers and its agreement with Redline has been terminated. (*Id.*)

FPM never made any sales under the 18 month provision of the Distribution Agreement which subjects the Distribution Agreement to termination. (*Id.* at ¶ 21.) Plaintiff, however, states that "FPM's failure to make sales under the Agreement" was caused by Redline's breach. *Id.*

Finally, Plaintiff has not relied upon a damages expert, and Mengrone has conceded in his deposition testimony that he did not know whether he would be able to sell any breathalyzers in the United States. (*Id.* at ¶¶ 22-24.) Plaintiff asserts that FPM's damages do not require expert testimony. (Pl.'s SUMF Response at ¶ 25.)

## II. Legal Standard

### A. Summary Judgment Standard

Summary judgment is appropriate if the record shows "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A district court considers the facts drawn from the "materials in the record, including depositions, documents, electronically stored information, affidavits . . . or other materials" and must "view the inferences to be drawn from the underlying facts in the light most favorable to the party opposing the motion." Fed. R. Civ. P. 56(c)(1)(A); *Curley v. Klem*, 298 F.3d 271, 276-77 (3d Cir. 2002) (internal quotations omitted). The Court must determine "whether the evidence presents a sufficient disagreement to require submission to a [trier of fact] or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). More precisely, summary judgment should be granted if the evidence available would not support a jury verdict in favor of the non-moving party. *Id.* at 248-49. "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Id.* at 247-48. Where the Parties "do not dispute the contents of the writings" but "disagree on the documents' legal effect" there are no genuine issues of material fact. *CECG, Inc. v. Magic Software Enter., Inc.*, 51 F. App'x 359, 363 (3d Cir. 2002).

**B.     Choice of Law**

Plaintiff argues that New Jersey law should govern this dispute. (Pl.'s Opp'n 8.) The Distribution Agreement provides that it "shall be deemed made in Cape Town, South Africa and shall be governed by the laws of that country." (ECF No. 58-1, Ex. A., 8 "Distribution Agreement.") The Distribution Agreement further provides that it "will be governed by the Convention on Contracts (Agreements) for the International Sale of Goods (CISG), and pursuant to Article 1(1)(a) and Article 10 of the CISG and this Agreement will be adjudicated in Bergen County, New Jersey, USA."[2] (*Id.*) Plaintiff argues that there is a conflict between the laws of South Africa and the CISG, since "South Africa is not even a signatory to the CISG." (Pl.'s Opp'n 8.)

Plaintiff further argues that New Jersey, when compared to South Africa, has a more significant interest in the instant claim and that Redline has not established a conflict in law as between New Jersey and South Africa since this action arises in the context of common law and basic contract principles. (Pl.'s Opp'n 9.)

Defendant asserts that Plaintiff has not indicated a specific conflict between the CISG and the laws of South Africa, and that no conflict exists. (Def.'s Reply 1.) Defendant, however, states that both South Africa and New Jersey law are essentially the same. (*Id.*)

"To resolve the choice-of-law question, we must evaluate the respective interests of the two involved states to determine the state that has the most significant interest in governing . . . ." *Erny v. Estate of Merola*, 171 N.J. 86, 91 (2002).

---

[2] This would appear to raise a question regarding venue since the agreement explicitly provides for venue in Bergen County, New Jersey. The Parties, however, do not raise this issue thus the Court will not reach it. *See* Fed. R. Civ. P. 12(b)(3).

As the Parties agree that no conflict exists as between the laws of South Africa and New Jersey, and the Defendant does not rebut Plaintiff's claims regarding the interests of New Jersey in the instant action, the Court will apply the laws of New Jersey. *Rowe v. Hoffman-La Roche, Inc.*, 189 N.J. 615, 621 (2007) (stating, "[i]f there is no actual conflict, then the choice-of-law question is inconsequential, and the forum state applies its own law to resolve the disputed issue.") Furthermore, while not discussed by the Parties, the Court notes that the Confidentiality and Nondisclosure Agreement executed by the Parties explicitly provides that it shall be governed by the laws of the State of New Jersey. (ECF No. 58-1, Ex. B. at 6.)

III. <u>Analysis</u>

    A. **The Distribution Agreement**

        1. **Parties' Positions**

Redline Products argues that it is entitled to summary judgment because, as an initial matter, the Distribution Agreement was limited to 12 customer accounts. (Def.'s Br. 15.) Defendant asserts that Plaintiff seeks to distort and transform the agreement from a limited contract to providing exclusivity in the United States. (*Id.*) Predictably, Plaintiff argues that the Distribution Agreement establishes FPM as the "Sole Exclusive USA Representative." (Pl.'s Opp'n 10.)

        2. **Contract Language**

In light of the stark distinctions in the Parties' interpretations of the Distribution Agreement, the contract language itself is especially relevant to the Court's disposition of this motion. Preliminarily, the Distribution Agreement defines Redline Products as the Supplier, and FPM as the Distributor. (Distribution Agreement).

> The purpose of the Agreement is set forth as follows:
>
> The Supplier grants the Distributor the sole selling rights for its Products <u>to the designated Accounts and Sales Groups</u> and any of their associates and affiliates listed in Article 1.3 hereinafter to be referred to as the **"the Territory."**

(*Id.* at 1) (first emphasis added).

The Product covered by the agreement is a "disposable chemical breathalyzer." *Id.* The Territory is defined as the United States of America. *Id.* At Article 1, Paragraph 4 of the Distribution Agreement, Redline Products approves the designation of 12 accounts and 6 sales groups within the Territory. (*Id.* at 2.) Pursuant to the Distribution Agreement, FPM is "entitled to seek new customers, which upon negotiations and approval from [Redline Products] can be added to the list of Accounts." (*Id.* at 3.) Finally, the Distribution Agreement may be modified by the parties "only by a written supplemental agreement executed by both parties." (*Id.* at 8.)

### 3. Analysis

In construing the contract's language, both Parties correctly assert that the Parol Evidence Rule applies in the instant action. (Pl.'s Opp'n 10; Def.'s Br. 15-20.) The Parol Evidence Rule prevents the introduction of oral promises to modify the terms of an integrated written agreement. *Everest Nat'l Ins. Co. v. Sutton*, No. 07-722 (JAP), 2008 WL 3833586, at *7 (D.N.J. Aug. 3, 2008) (internal citation omitted).

Furthermore, "to prevail on a breach of contract claim under New Jersey law, a plaintiff must prove four elements: (1) a valid contract existed between plaintiff and defendant; (2) defendant breached this contract; (3) plaintiff performed under this contract; and (4) plaintiff was damaged as a result of defendant's breach." *W. v. IDT Corp.*, No. 01-4372 (WHW), 2008 WL 762459, at *3 (D.N.J. Mar. 19, 2008) (internal citation omitted). The Parties do not dispute

7

the existence of the contract; rather it is whether the contract was breached and if the alleged breach resulted in any damage which is contested by the Parties.

### a. Defendant Did Not Breach The Distribution Agreement

#### 1. The Distribution Agreement is Not Exclusive

"The court can grant summary judgment on an issue of contract interpretation if the contractual language being interpreted is subject to only one reasonable interpretation." *Emerson Radio Corp. v. Orion Sales, Inc.*, 253 F.3d 159, 163-64 (3d Cir. 2001) (internal quotation omitted). In addition, "it is not the Court's obligation to sift through the record searching for a genuine issue of material fact." *Dunkin Donuts v. Patel*, 174 F. Supp. 2d 202, 210 (D.N.J. 2001). Furthermore, "a party does not raise a genuine issue of material fact by speculation and conclusory allegations." *Id.*

Defendant's argument that there has not been a breach takes several forms. Primarily, Defendant argues that the Agreement did not provide for exclusivity. The Court agrees. The contract states, in no uncertain terms, that the "Supplier grants the Distributor the sole selling rights for its Products to the designated Accounts and Sales Groups." The only reasonable interpretation in construing this language is that Plaintiff was given the sole rights of distribution as it relates to the accounts specifically delineated in the contract, not to the entire market of the United States. This reasonable construction is bolstered by language in the contract which precluded the Plaintiff from distributing the product to other accounts not listed in the contract without the express permission of the Defendant. Plaintiff has failed to raise a genuine issue of material fact to the contrary.

2. Plaintiff Has Not Raised a Genuine Issue of Material Fact

Defendant having carried its burden that summary judgment is appropriate has shifted the burden to Plaintiff to establish that a genuine issue of material fact remains. *Id.* In this regard, Plaintiff, in essence, offers only that: (1) "[i]t would have made no sense for FPM to enter into this Agreement without exclusivity" and (2) "[t]he listing of specific accounts in the Agreement in no way limits FPM's exclusivity." (Pl.'s Opp'n 12-13.) The Court finds those assertions in complete contravention of the explicit terms of the integrated Distribution Agreement. Accordingly, summary judgment is appropriate as to Plaintiff's breach of contract claim related to the Distribution Agreement.

### b. Plaintiff has also Failed to Establish Damages

Alternatively, Defendant argues that Plaintiff has failed to prove damages. (Def.'s Br. 20-21.) Plaintiff argues that the value of FPM's rights is established by Redline's sale of the exclusive distribution rights in the United States to BBYG for one million dollars. (Pl.'s Opp'n 14.) Plaintiff further argues that Mengrone is entitled to recover for the time and expenses associated with the six months he dedicated to promoting Redline's product and preparing for distribution. (*Id.*).

Proof of damages is an essential element of a breach of contract claim. *Gazarov v. The Diocese of Erie*, 80 F. App'x 202, 206 (3d Cir. 2003). Here, Plaintiff has failed to raise a genuine issue of material fact regarding any damages resulting from Defendant's alleged breach. *Khrakovskiy v. Denise*, No. 06-1033 (JAG), 2009 WL 3380326 (D.N.J. Oct. 19, 2009). "[T]his Court shall not speculate about what damage might have resulted from the breach. Damages claimed in a breach of contract action must be reasonably certain and not speculative. Anticipated profits that are remote, uncertain or speculative . . . are not recoverable." *Horton v.*

*Ross Univ. Sch. of Med.*, No. 04-5658 (JAG), 2006 WL 1128705, at *9 (D.N.J. Mar. 30, 2006) (internal citations and quotations omitted). Plaintiff's position that the Court can look to Defendant's Agreement with BBYG to establish Plaintiff's alleged damages is misplaced. The agreement with BBYG is sufficiently dissimilar that it cannot provide an appropriate metric of damages. The Court finds the following distinctions persuasive. The BBYG Agreement covers a larger territory. (ECF No. 58-1, Ex. C) (stating that the BBYG Agreement covers all of North America, as compared to the Distributor Agreement between Redline and FPM which covered only the United States and was limited to 12 specific accounts). Furthermore, the BBYG agreement was supported by distinguishable consideration. Specifically, "in exchange for . . . exclusive rights and 1 million breathalyzer units, Blow Before you Go paid Redline $1 million." *Id.* The Redline and FPM Agreement contained no comparable terms. Finally, as to the contention of damages associated with the time and effort expended by Mengrone, Plaintiff has failed to provide *any* evidence related to these purported damages. Accordingly, the Court finds that Plaintiff has failed to raise a genuine issue of material fact as it relates to damages resulting from the alleged breach of contract.

  **B. The Confidentiality Clause**

    **1. Parties' Positions**

Plaintiff alleges that "[u]pon information and belief, Redline Products has breached the Confidentiality Clause contained in the distribution agreement by divulging information related to the Contract to Blow Before You Go . . . ." (Compl., Count 1, ¶ 7.) Plaintiff further alleges that "Under Article 6 of the distribution agreement, both parties are barred from disclosing to any third-party information supplied by the other party during the term of the agreement, and they shall not disclose any other information supplied by the other party." (Compl., Count 2, ¶ 1.)

Plaintiff argues that pursuant to the Confidentiality and Nondisclosure Agreement, neither Party shall disclose confidential information, which included "accounts and sales-groups." (Compl., Count 2, ¶¶ 1-4.) Plaintiff also alleges that "[u]pon information and belief, Redline Products has disclosed FPM's accounts and sales-groups to Blow Before You Go" and that Redline received this information from FPM "in the course of its dealings with FPM for purposes of distributing Redline within the United States." (Compl., Count 2, ¶¶ 5-8.) Plaintiff alleges that this constitutes a breach from which it has incurred damages. (*Id.*)

Defendant argues that it has not breached the agreements. (Def.'s Br. 29.) Rather, Redline argues that it was FPM's filing of its Complaint in the instant action which disclosed the identity of the 12 customers and terms of the Distribution Agreement. (*Id.*)

   2.  Analysis

While the Parties clearly dispute whether or not the Defendant has breached the promises of confidentiality, the Court finds that Plaintiff has failed to raise a genuine issue of material fact regarding any resulting damages. Most importantly, even assuming a breach has occurred, FPM has failed to indicate any damages it sustained as a result of the alleged revelation of its accounts. Accordingly, summary judgment is GRANTED with regard to Count 1 and Count 2 of Plaintiff's Complaint.

  C.  **Quantum Meruit & Unjust Enrichment**

Count 4 and Count 5 of Plaintiff's Complaint apparently allege claims of quantum meruit and unjust enrichment, respectively. Plaintiff's claims allege that the Plaintiff provided certain services in response to Defendant's actions. Specifically, Defendant allegedly induced Plaintiff's "actions in promoting and marketing Redline across the United States." (Compl., Count 4, ¶ 6.) The quasi contractual theory of quantum meruit requires the Plaintiff to establish: "(1) the

performance of services in good faith; (2) the acceptance of the services by the person to whom they are rendered; (3) an expectation of compensation therefore; and (4) the reasonable value of the services." *Canadian Nat. Ry. v. Vertis, Inc.*, 811 F. Supp. 2d 1028, 1033 (D.N.J. 2011).

In establishing a claim for unjust enrichment, "a plaintiff must show both that defendant received a benefit and that retention of that benefit without payment would be unjust." *VRG Corp. v. GKN Realty Corp.*, 135 N.J. 539, 554 (1994). It is well established that: "Quasi-contract liability will not be imposed . . . if an express contract exists concerning the identical subject matter." *Suburban Transfer Serv., Inc. v. Beech Holdings, Inc.*, 716 F.2d 220, 226-27 (3d Cir. 1983). The authority of an express contract will take precedence over a theory of unjust enrichment or quasi-contract liability concerning the identical subject matter since "[t]he parties are bound by their agreement, and there is no ground for implying a promise so long as a valid unrescinded contract governs the rights of the parties." *N'Jie v. Mei Cheung*, No. 09-919 (SRC), 2011 WL 809990, at *6 (D.N.J. Mar. 1, 2011), *aff'd*, 504 F. App'x 108 (3d Cir. 2012) (internal quotation omitted). Since the Parties' contract governs Plaintiff's claims of quantum meruit and unjust enrichment, Count 4 and 5 respectively, are DISMISSED.

III. **Conclusion**

After careful consideration, the Court finds that Defendant is entitled to summary judgment. For the reasons set forth above, and for other good cause shown, it is hereby ordered that Defendant's Motion for Summary Judgment is GRANTED. An order will be entered consistent with this Opinion.

MICHAEL A. SHIPP
UNITED STATES DISTRICT JUDGE

Dated: